# EXHIBIT B

# Complaint to Trans Union, LLC

## IN THE SUPERIOR COURT FOR THE
## DISTRICT OF COLUMBIA

JAH JAH BEY,
1462 Belmont Street
NW, District of Columbia 20009

CASE NO.

Plaintiff,

vs.

Judge **15 - 005289**

TRANS UNION LLC,
1013 Centre Road
Wilmington, DE 19805
Serve: CSC Lawyers Incorporating Service Co.
7 Saint Paul Street Suite 1660
Baltimore, MD ~~20005~~ 21202



FILED
CIVIL ACTIONS BRANCH

JUL 15 2015

Superior Court
of the District of Columbia
Washington, DC.

Defendant.

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, Jah Jah Bey, (hereafter the "Plaintiff") and for his Complaint against the Defendant Trans Union LLC ("TU") alleges as follows:

### PRELIMINARY STATEMENT

1.     This is an action for actual damages, statutory damages, and punitive damages, costs and attorney's fees brought pursuant to 15 U.S.C. §1681 (Fair Credit Reporting Act or FCRA).

### PARTIES

2.     Plaintiff Jah Jah Bey is a natural person and resides in the District of Colombia. He is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).

3.     Upon information and belief, TU, is a Delaware Limited Liability Company authorized to do business in the District of Colombia.



.1



4.     Upon information and belief, TU is a "consumer reporting agency," as defined in 15 U.S.C. §1681a(f).

5.     Upon information and belief, TU  is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

## FACTS

6.     On or about November 2013, Plaintiff began using Sprint's cellular phone service.

7.     Plaintiff never made any late payments and never missed any payments while using Sprint's cellular phone services.

8.     Plaintiff stopped using Sprint's cellular phone services on or about May 2014, and was never subject to any early termination fees, penalties, or violations regarding the service Plaintiff received from Sprint.

9.     On August 2014, Plaintiff received a letter("LTTR1") from GC Services Limited Partnership ("GCS") attempting to collect an alleged debt of $403.71 that purportedly derived from a cellular phone service agreement Mr. Bey had with Sprint.

10.     On or about September 8, 2014, Plaintiff sent a letter ("DL1") to GCS requesting that GCS send him any document or documents that could establish GCS's authority to collect on the Sprint Account. DL1 also included language requesting GCS to send Plaintiff any

document or documents that could establish the debt amount of $403.71, and Plaintiff's liability to pay the debt amount of $403.71.

11.     On or about September 11, 2014, Plaintiff received a second debt collection letter from GCS ("LTTR2"). LTTR2 did not include any document or documents that could establish any of Plaintiff's requests in his first dispute letter (DL1) to GCS.

12.     On or about September 15, 2014, Plaintiff sent a second dispute letter ("DL2") to GCS requesting that GCS send him any document or documents that could establish GCS's authority to collect on the Sprint Account. DL2 also included language requesting GCS to send Plaintiff any document or documents that could establish the debt amount of $403.71, and Plaintiff's liability to pay the debt amount of $403.71.

13.     On or about September 18, 2014, Plaintiff received a third letter from GCS ("LTTR3") purporting to be verification of the alleged debt Plaintiff had disputed in his DL1 and DL2 letters. Attached to LTTR3, was a summary invoice from Sprint which displayed May 2014 payment in full from Plaintiff.

14.     On October 6, 2014, Plaintiff called GCS to inquire about the GCS collection account. Plaintiff asked an account representative from GCS several questions that were answered as seen below:

    a) Plaintiff: "Does GC Services own the account they are attempting to collect from me?" Representative: "Yes, we are collecting on the account we have on file."

    b) Plaintiff: "How did the amount of $403.71 accrue since I paid my full balance in May?" Representative: "The $403.71 is owed due to early termination fees."

c) Plaintiff: "Do you currently have any documentation or contract that authorizes such early termination fees and that I am liable to such early termination fees?" Representative: "No".

d) Plaintiff: "Has GCS ever been in possession of any documentation or contract that authorizes such early termination fees, and confirms that I am liable to such early termination fees?" Representative: "I can't say because we don't have any information on file regarding your Sprint account."

15. On or about October 9, 2014, Plaintiff received a fourth letter from GCS ("LTTR4") purporting to be verification of the alleged debt Plaintiff had disputed in his DL1 and DL2 letters. Attached to LTTR4, was a summary invoice from Sprint which displayed May 2014 payment in full from Plaintiff.

16. On or about October 31, 2014, Plaintiff sent a dispute letter ("CRADL1") to TU disputing the GCS collection account.

17. Plaintiff's CRADL1 dispute letter included a detailed description of the nature of Plaintiff's dispute.

18. Plaintiff's CRADL1 dispute letter contained language that informed TU that the debt amount being reported was incorrect because it derived from early termination fees that Plaintiff was never subject to with respect to the Sprint account.

19. Plaintiff's CRADL1 dispute letter contained language that informed TU that GCS had absolutely no documentation that could establish the debt amount of $403.71. CRADL1 also

contained language that instructed TU to request any documentation from GCS that could establish the debt amount of $403.71 being reported on Plaintiff's TU consumer report.

20.     The GCS collection account was incorrect and the debt amount of $403.71 reported by GCS was incorrect.

21.     TU responded to Plaintiff's CRADL1 dispute letter by verifying and continuing to report the GCS account.

22.     On December 4, 2014, Plaintiff sent a third letter ("DL3") to GCS requesting that GCS send him any document or documents that could establish GCS's authority to collect on the Sprint Account. DL3 also included language requesting GCS to send Plaintiff any document or documents that could establish the debt amount of $403.71, and Plaintiff's liability to pay the debt amount of $403.71.

23.     GCS never responded to DL3 and never provided Plaintiff with any document or documents requested in Plaintiff's DL1, DL2, or DL3 letters.

24.   On or about January 26, 2015, Plaintiff sent a second dispute letter ("CRADL2") to TU disputing the GCS collection account.

25.     Plaintiff's CRADL2 dispute letter contained language that explained why the GCS collection account being reported was incorrect

26.     Plaintiff's CRADL2 dispute letter contained language that informed TU that GCS has not provided him with, and is not in possession of any documentation that could establish the debt amount being reported on Plaintiff's TU consumer report.

27.     Plaintiff's CRADL2 dispute letter included language that informed TU of Plaintiff's requests (DL1, DL2, and DL3) asking GCS to provide any documentation that could establish correct reporting of the GCS account.

28.     CRADL2 contained language that informed TU of GCS's failure to provide any of the requested documentation in Plaintiff's dispute letters (DL1, DL2, and DL3).

29.     Plaintiff's CRADL2 dispute letter contained new documentation that verified timely monthly payments made by Plaintiff to Sprint.

30.     Plaintiff's CRADL2 dispute letter contained language that informed TU that GCS had absolutely no documentation that could establish the debt amount of $403.71. CRADL2 also contained language that instructed TU to request any documentation from GCS that could establish the debt amount of $403.71 being reported on Plaintiff's TU consumer report.

31.     The GCS collection account was incorrect and the debt amount of $403.71 reported by GCS was incorrect.

32.     TU responded to Plaintiff's CRADL2 dispute letter by verifying and continuing to report the GCS account.

33.     On March 9, 2015, Plaintiff contacted GCS via telephone to obtain details about the alleged debt and was advised again that GCS had limited information on the debt. Plaintiff inquired into GCS's legal right to collect the alleged debt, and was told by GCS's employee, Robert Alvarado, that GCS did not have proof of a contractual right to collect the alleged debt or contractual proof of how the alleged debt accrued to be $403.71.

34.     The GCS collection account and debt amount reported is completely false, incorrect, and unfounded for as it is an alleged debt from a creditor that Plaintiff has paid in full and does not owe a debt to.

35.     TU knew the GCS account was being reported incorrectly and willfully violated Mr. Bey's rights under the FCRA by refusing to correct or delete the account. TU also willfully violated Mr. Bey's rights under the FCRA by failing to conduct a reasonable investigation even though TU had reason to believe the GCS collection account was being reported incorrectly.

## COUNT ONE: VIOLATIONS OF FAIR CREDIT REPORTING ACT

36.    Plaintiff incorporates paragraphs 1-35 by reference.

37.    TU violated 15 U.S.C..§1681i(a)(1),(5)(A) by failing to conduct a reasonable investigation and by failing to promptly delete the disputed accounts after receiving Plaintiff's CRADL1 and/or CRADL2 disputes.

38.    TU violated 15 U.S.C. §1681i(a)(1) by willfully or negligently failing to conduct a reasonable investigation within thirty (30) days of Plaintiff's dispute letters CRADL1 and/or CRADL2 .

39.    TU violated 15 U.S.C. §1681i(a)(2) by willfully or negligently failing to provide GCS with all the relevant information supporting Plaintiff's dispute letters CRADL1 and/or CRADL2.

40.    TU violated 15 U.S.C. §1681i(a)(4) by willfully or negligently failing to review and consider all the information provided in Plaintiff's dispute letters CRADL1 and/or CRADL2.

41.    TU violated its obligations under 15 U.S.C. §1681e(b)(1) to follow reasonable procedures to assure maximum accuracy by relying on unreliable, discredited sources of information, provided by GCS.

42.    As a result of conduct, actions and inactions of TU, the Plaintiff suffered actual damages including without limitation, by example only and as described herein by Plaintiff:

8

credit repair costs, loss of credit opportunity, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

43.     TU's conduct, actions and inactions were willful, rendering TU liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, TU was negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

44.     The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from TU in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

45.     Plaintiff is seeking punitive damages in the amount of $15,000 for Defendants' willful violations of the FCRA under 15 U.S.C. §1681n. Plaintiff is also seeking actual damages in the amount of $2,500 for Defendant's negligent and willful violations of the FCRA under 15 U.S.C. §1681n & §1681o. Additionally, Plaintiff is entitled to statutory damages of $1,000 and his costs for bringing this action. Lastly, Plaintiff reserves his right to obtain an attorney and seek attorney's fees.

WHEREFORE, your Plaintiff requests $2,500 in actual damages from Defendant; $15,000 in punitive damages for violations of the FCRA; $1,000 in statutory damages; and such other relief as the Court deems just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

**Jah Jah Bey**

By _____

Jah Jah Bey
1462 Belmont Street NW
Washington, DC 20009
(202) 500-1331
jahjahbey@gmail.com
*Pro Se Plaintiff*